STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-725

STATE OF LOUISIANA

VERSUS

MELVIN B. MORRIS

**********
APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 66,818
HONORABLE LESTER P. KEES, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

**AFFIRMED IN PART; REVERSED IN PART; SENTENCE VACATED AND SET ASIDE; AND REMANDED WITH INSTRUCTIONS.**

**Hon. William E. Tilley**
**District Attorney - 30th JDC**
**Terry W. Lambright**
**Assistant District Attorney**
**P.O. Box 1188**
**Leesville, LA 71496-1188**
**(337) 239-2008**
**Counsel for Plaintiff/Appellee:**
    **State of Louisiana**

**Carey J. Ellis, III**
**Louisiana Appellate Project**
**P. O. Box 719**
**Rayville, LA 71269**
**(318) 728-2043**
**Counsel for Defendant/Appellant:**
     **Melvin B. Morris**

GREMILLION, Judge.

In this case, the defendant, Melvin Morris, was convicted of one count of filing false public records, in violation of La.R.S. 14:133, one count of insurance fraud, in violation of La.R.S. 22:1243(A)(2), and one count of theft over $500, in violation of La.R.S. 14:67(B)(1). He was sentenced to five years at hard labor and ordered to pay a fine of $1000 plus court costs for the conviction of theft over $500. On the remaining two charges, he was sentenced to three years at hard labor and ordered to pay a fine of $750 plus court costs. All sentences were ordered to run concurrently with each other. The trial court then suspended the sentences and placed Defendant on supervised probation for a period of five years. Additionally, he was ordered to pay restitution to AIG Insurance Company in the amount of $4400. He now appeals contending that the evidence was insufficient to support his convictions. For the following reasons, we affirm the convictions for insurance fraud and felony theft, but reverse the conviction for filing false public records. However, because of an error patent on the face of the record, the case is remanded to the trial court with instructions for resentencing.

**FACTS**

On January 30, 2004, Defendant reported to police that four tires and rims, ten Marc Anthony amplifiers, and a Sony compact disc changer were stolen from his truck. He subsequently received $4000 from AIG for these items. Thereafter, on April 6, 2004, police felt the tires and rims on Defendant's truck matched those he had earlier reported as stolen. The truck was then seized and

1

Defendant was charged with filing false public records, insurance fraud, and felony theft.

## SUFFICIENCY OF EVIDENCE

**Insurance Fraud and Theft**

Defendant contends there was insufficient evidence to legally convict him of each of the charges against him.

> When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 00-0674, (La.6/29/01)[,] 796 So.2d 649, 657 (citing *State v. Captville*, 448 So.2d 676, 678 (La.1984)).
>
> When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *Neal*, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under *Jackson* to prove guilt beyond a reasonable doubt to a rational jury. *Id*. (citing *State v. Rosiere*, 488 So.2d 965, 968 (La.1986)).

*State v. Brown*, 03-0897, p. 22 (La. 4/12/05), 907 So.2d 1, 18.

In November 2003, Defendant bought a 1992 Chevrolet Silverado extended-cab show truck from Thomas Byles. The truck was painted a "yellow checkerboard," was equipped with ten Marc Anthony amplifiers, a custom amplifier rack cover, four Remington brand tires, and a lockable bed cover.

On January 29, 2004, Defendant drove Billy Dalby to New Orleans for a doctor's appointment using a vehicle rented by Dalby. Dalby testified that they returned to Leesville, after which he dropped Defendant off at his home by 7:00 p.m.

2

On January 30, 2004, at approximately 2:30 a.m., Lieutenant Jeanette Miller responded to a call from Defendant's residence. When she arrived there, Defendant told her that he had gone to New Orleans and had "gotten home probably around two o'clock in the morning," when he noticed that his truck was on blocks and the tires were gone. Lieutenant Miller observed that all four tires and rims had been removed from the truck and the lug nuts were lying nearby. According to Lieutenant Miller, the amplifier cover had been set to the side and ten Marc Anthony amplifiers had been removed from the bed of the truck. Additionally, she said a Sony CD changer had been taken. She did not observe any signs of forcible entry into the truck; however, she noted that the latch from the truck's bed cover was missing.

Investigator Zachary Strickland eventually took over the case. During the early stages of the investigation, he contacted Sergeant Kevin Rhodes with the Insurance Fraud Unit of the Louisiana State Police in order to determine if Defendant had filed an insurance claim. Sergeant Rhodes contacted AIG and found out that Defendant had been paid approximately $4000 as a result of the theft. He provided Investigator Strickland with this information. When asked about his claim, Defendant told Investigator Strickland that AIG had denied his claim and he replaced the stolen items "out of his pocket."

Investigator Strickland contacted the previous owner of the truck, Thomas Byles. Byles informed him about the specific make-up of the truck and gave him a photograph of it. On April 6, 2004, Investigator Strickland, along with Investigator Johnny Hagan, went to Defendant's residence. When driving by, the two noticed that the truck in question was equipped with tires and rims that looked like

those that had been reported stolen. The two then took photographs of the truck. Sergeant Rhodes also drove by the Defendant's residence that same day. He testified that he felt, based on the photograph provided by Byles, that the rims and tires on the truck appeared to be the "same exact rims and similar tires" as those that were on the truck when Defendant bought it.

It is interesting to note that Defendant called Investigator Strickland on April 7, 2004, and informed him that he had posted a five hundred-dollar reward for information regarding the stolen property, but had heard nothing.

Pursuant to the April 6, 2004 photographs and Investigator Strickland's discussions with Byles and Sergeant Rhodes, a search warrant was issued for Defendant's residence and the truck in question. The truck was seized on April 8, 2004, after which Byles "identified the rims, tires, Weld racing caps, the amplifiers, the amplifier rack that he (sic) custom built and the latch on the back of the cover of the truck."

During Defendant's trial, Byles examined the tires and testified that the two back tires were fifteen-inch Remington tires and looked like the two he sold Defendant. Additionally, he said that the rims and Weld racing caps appeared to be the same rims he sold Defendant; but, he admitted that there were no identifying marks on the rims. Byles later testified that the left front tire depicted was not the same tire he sold to Defendant.

Byles also testified that the ten amplifiers admitted into evidence appeared to be the same amplifiers he sold the Defendant. When asked how he knew they were the same ones, he testified as follows: "Well, they just -- you know, you

4

just kind of know them things." Under cross-examination, he noted that each of the amplifiers had red markings or "red things" on them and then testified that the amplifiers he placed in the truck did not have the "red things" on them. However, when asked how he could be certain that the amplifiers at issue where the ones he sold Defendant, he stated, "They appear to be."

Byles also testified that one of the amplifiers had a badge or name plate attached to it with the name "Marc Antony LTD.," painted yellow to match the color of the truck. He explained that he did this because people would steal the badges at shows. He said that he tried to keep them all painted, but because people kept stealing them they were not always painted the same color as the truck. Byles could not remember how many of the badges were painted yellow at the time he sold the truck to Defendant.

Defendant was convicted of insurance fraud, a violation of La.R.S. 22:1243. Louisiana Revised Statute 22:1243(A) provides, in pertinent part, as follows:

> Any person who, with the intent to injure, defraud, or deceive any insurance company, or the Department of Insurance, or any insured or other party in interest, or any third party claimant:
>
> . . . .
>
> (2) Presents or causes to be presented any written or oral statement including computer-generated documents as part of or in support of or denial of a claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or fraudulent information concerning any fact or thing material to such claim;
>
> . . . .

5

is guilty of a felony and shall be subjected to a term of imprisonment, with or without hard labor, not to exceed five years, or a fine not to exceed five thousand dollars, or both, on each count.

Defendant was also convicted of theft in an amount greater than $500, a violation of La.R.S. 14:67. Louisiana Revised Statute 14:67(A) provides:

Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

At trial, the parties stipulated that Defendant filed a claim with AIG and was paid $4000. Considering the evidence, albeit circumstantial, the jury did not abuse its vast discretion in finding him guilty of insurance fraud and of theft of over $500. The jury could have reasonably concluded that the rims, tires, and amplifiers were sold to Defendant by Byles and were then removed by him in order to file a claim. It is also reasonable to conclude that once Defendant was paid the insurance claim by the insurer, he simply replaced the rims, tires, and amplifiers on his truck. Accordingly, we find that when the evidence is viewed in the light most favorable to the prosecution, it excludes every reasonable hypothesis of innocence. This assignment of error is dismissed as being without merit.

**Filing False Public Records**

Defendant was convicted of filing false public records, a violation of La.R.S. 14:133. That statute provides, in pertinent part, as follows:

A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:

(1)  Any forged document.

(2)  Any wrongfully altered document.

(3)  Any document containing a false statement or false representation of a material fact.

"[Louisiana Revised Statutes] 14:133 does not require that the record filed be 'public' but that it must be **filed or deposited**, with knowledge of its falsity, '**in any public office or with any public officer**.'"  *State v. Salat*, 95-72, p. 5 (La.App. 1 Cir. 4/4/96), 672 So.2d 333, 337, *writ denied*, 96-1116 (La. 10/4/96), 679 So.2d 1378.

The State based its case on the fact that "defendant called the Leesville City Police Department, a public agency, a public body, made a call that there had been allegedly a burglary at his residence in Leesville in Vernon Parish of certain items off of his customized truck."  Accordingly, it is Defendant's call to police that the State contends constituted the filing of a false public record.

In *Salat*, the defendant's conviction for filing false public records was affirmed.  The conviction was supported by testimony that suit numbers assigned to each of six petitions filed by him did not conform to suit numbers appearing on computer indices for the days on which the suits were hand-stamped as filed.  It was further supported by the testimony of the clerk that the defendant presented the petitions to him with file date stamps already on the signature page of each of the six petitions.

Also, in *State v. Amato*, 96-606 (La.App. 1 Cir. 6/30/97), 698 So.2d 972, *writs denied*, 97-2626, 97-2644 (La. 2/20/98), 709 So.2d 772, the supreme court affirmed the defendant's conviction for filing false public records.  The defendant gave a sick leave form with allegedly false information to the clerk who handled

7

payroll for the division of the Public Works Department, where he worked. The clerk indicated she utilized those forms in preparing payroll and that payroll records were kept in a file cabinet in that office. The supreme court noted that the jury could have reasonably believed that the forms were submitted for the purpose of being "of record" in a public office. Additionally, the supreme court found that the jury could have concluded that the forms contained false information even though the defendant presented testimony indicating he was having health problems during the period in question, as the state presented a statement by defendant in which he admitted he was not sick but was building a house, as well as testimony from an assistant parish attorney that the defendant admitted he was not sick on the days he took sick leave.

In *State v. Carpenter*, 00-436 (La.App. 3 Cir. 10/18/00), 772 So.2d 200, *writ denied*, 00-3152 (La. 1/25/02), 806 So.2d 665, we affirmed the defendant's conviction for filing false public records. We found the defendant, the police chief, aided and abetted in the filing of a false report and was, therefore, a principal to the offense. The evidence indicated that the defendant planted white powder in the suspects' car, and that the false report was predicated on that evidence. Given his position and experience as chief, he had to know that the false report would be prepared and filed and that both the false evidence and the false report would be used to support the improper arrests. Additionally, the defendant maintained, in his department, a document containing a false statement with knowledge of its falsity.

This case is distinguishable from the above cited cases. Although Defendant informed police of an allegedly false crime, he did not file an actual

8

document or record.  Defendant's call to police would be covered by La.R.S. 14:59, which provides, in pertinent part:

> A.  Criminal mischief is the intentional performance of any of the following acts:
>
> . . . .
>
> (5)  Giving of any false report or complaint to a sheriff, or his deputies, or to any officer of the law relative to the commission of, or an attempt to commit, a crime.

"The crime of criminal mischief requires the 'intentional' performance of certain acts--in this case, giving a false report to an officer of the law relative to the commission of a crime."  *State ex rel. Johnson v. Maggio*, 449 So.2d 547, 550 (La.App. 1 Cir.), *writ denied*, 450 So.2d 354 (La.1984).

Since Defendant merely contacted police, but did not actually file or deposit for record any document in any public office or with any public official any document, we find merit in this assignment of error.  Therefore, his conviction and sentence for filing false public records is vacated and set aside.

## ERRORS PATENT

We review all appeals in accordance with La.Code Crim.P. art. 920 for errors patent on the face of the record.  After reviewing the record, we find one error patent which requires the sentences imposed be vacated.  The trial court imposed indeterminate sentences because it suspended the sentences and placed Defendant on five years of supervised probation without specifying to which count or counts the probation applied.  After imposing a sentence on each count, the trial court ordered the sentences to run concurrently with each other.  It then stated, "The jail terms are suspended and you are placed on supervised probation for 5 years."  The trial court

9

then imposed the conditions of La.Code Crim.P. art. 895 and several special conditions of probation.

We recently addressed a similar issue and found the sentences to be indeterminate:

> After ordering each of the Defendant's sentences to run concurrently, and after suspending the execution of each sentence, the trial court placed the Defendant on supervised probation for a period of four years. The trial court failed to specify, however, whether the four-year probationary period applied to one or both counts of theft. Thus, the sentences imposed by the trial court are indeterminate. This court faced a similar issue in *State v. Taylor*, 01-680, p. 2 (La.App. 3 Cir. 11/14/01), 801 So.2d 549, 550, wherein this court stated the following:
>
>> After suspending five years of the defendant's eight-year sentence and the totality of the six-year sentence, the trial court imposed a five-year supervised probation period. It is unclear, however, to which sentence this probation period applies or whether it applies to each. Thus, the sentences are indeterminate and in violation of La.Code Crim.P. art. 879, which provides: "If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence.
>>
>> Finding the defendant's sentences indeterminate, we vacate the sentences and remand this matter to the trial court for the imposition of determinate sentences. In doing so, we instruct the trial court to specify whether the periods of probation are to be served concurrently or consecutively and upon what point the probated sentences begin as to each count. *See* La.Code Crim.P. art. 883.

*Id.* at 550.

Likewise, this court finds the sentences imposed in the present case are indeterminate. Accordingly, the sentences are vacated and the case remanded for the imposition of determinate sentences. This court instructs the trial court "to specify whether the periods of probation are to be served concurrently or consecutively and upon what point the probated sentences begin as to each count." *Taylor*, 801 So.2d at 550.

10

*State v. Williamson,* 04-1440, pp. 1-2 (La.App. 3 Cir. 3/2/05), 896 So.2d 302, 304.

Similarly, the trial court in the present case failed to specify to which count or counts the five-year probationary period applied. Thus, following *Taylor* and *Williamson*, we find Defendant's sentences are indeterminate and remand the case for resentencing. Upon remand, the trial court is instructed that if probation is imposed, it should specify on what count or counts it is being imposed. Additionally, it should "specify whether the periods of probation are to be served concurrently or consecutively and upon what point the probated sentences begin as to each count." *Id.*

Additionally, the trial court failed to establish a payment plan when it ordered Defendant to pay $4400 in restitution to AIG as a condition of his probation. We have found error patent when the trial court failed to establish a payment plan for fees ordered as a condition of probation. *See State v. Reynolds*, 99-1847 (La.App. 3 Cir. 6/7/00), 772 So.2d 128, and *State v. Fontenot*, 01-540 (La.App. 3 Cir. 11/7/01), 799 So.2d 1255. Thus, upon remand, the trial court is instructed to establish a payment plan for all fees ordered as a condition of Defendant's probation.

**CONCLUSION**

Defendant's convictions for insurance fraud and theft are affirmed, but his conviction for filing false public records is vacated and set aside. However, Defendant's sentences are vacated as indeterminate and the case remanded for resentencing. If probation is imposed by the trial court, it is instructed to specify on which count or counts probation is being imposed. Additionally, it is instructed to specify how the probation is to run and when it begins as to each conviction. Finally,

11

the trial court is instructed to establish a payment plan for all fees ordered as a condition of probation.

**AFFIRMED IN PART; REVERSED IN PART; SENTENCE VACATED AND SET ASIDE; AND REMANDED WITH INSTRUCTIONS.**