laSHORTESS, Judge.
Wilbur J. Daigle (defendant) was charged by grand jury indictment with forgery and conspiracy to commit forgery, La. R.S. 14:72 and 14:26, as well as filing false public records and conspiracy to file false public records, La. R.S. 14:133 and 14:26. He pleaded not guilty and, after trial by jury, was found guilty as charged on all counts. He was sentenced to three years at hard labor each on the counts of forgery and filing false public records and two years at hard labor on each of the two counts of conspiracy, with credit for time served. The sentences were ordered to be served concurrently. The court then suspended the execution of the sentences and placed defendant on active supervised probation for three years with a number of special conditions. Defendant appeals.
FACTS
Defendant does not dispute the facts elicited at trial, which are as follows. Linda J. Elkins filed an action request in Alabama under the Uniform Reciprocal Enforcement of Support Act (URESA) seeking to have defendant declared the father of her two children, Allison and Jason, and to have defendant ordered to pay child support. At a hearing on November 16, 1993, before an East Baton Rouge Parish Juvenile Court hearing officer, defendant stipulated he would undergo a blood test. The stipulation before the hearing officer was incorporated into a judgment signed by a Juvenile Court judge on December 8, 1993. The test was scheduled for December 17, 1993, at defendant’s request.
On that date, defendant drove to the Leo Butler Community Center in Baton Rouge accompanied by another man. Defendant left the man in his vehicle, went inside, and spoke to Janice Fairchild, a certified phlebotomist working for GenTest Laboratories, Inc. He told her Wilbur Daigle, who had an appointment for blood testing, had been in an accident. He stated Daigle was in his vehicle and requested she draw Daigle’s blood in the vehicle due to his injuries. Fairchild refused, and approximately 30 minutes later defendant’s companion, wearing a neck brace, sunglasses, and a east on his arm, presented himself as Daigle. Fairchild examined the man’s military identification, photographed him, took his thumbprints, and had him sign a consent form. The man signed the name ‘Willbur |3J. Daigle, Jr.” to the form.[2] She then drew his blood, which was packaged, sealed, and sent to GenTest. DNA tests showed the man from whom the blood was drawn was not the father of Allison and Jason Elkins. The test results, together with the entire packet of chain of custody documents, including the consent form, were filed with the East Baton Rouge Parish Clerk of Court in the URESA suit record on June 13,1994.
By coincidence, Robert Schilling, a Baton Rouge police officer, was in the Butler Community Center on December 17, 1993. Schilling was in the same Army Reserve unit as defendant. He overheard’ the conversations between defendant and Fairchild. He was puzzled because he knew that defendant, and not the man in sunglasses and neck brace, was Wilbur Daigle. He did not speak to Fairchild at the time but came forward later. Defendant eventually agreed to be tested and, after receiving the results of the second DNA test,[3] stipulated to paternity and agreed to pay child support.
ASSIGNMENTS OF ERROR
Defendant asserts four assignments of error, all of which are related to two issues: (1) whether the acts committed by defendant constitute the crime of forgery since the imposter signed defendant’s name with defendant’s consent; and (2) whether the document signed by the imposter was a “public record” within the meaning of Louisiana Revised Statute 14:133 so as to constitute the *69 crime of filing a false public record. Specifically, defendant asserts the trial court erred in denying a motion to quash based on these two issues, in failing to give certain special jury instructions, and in convicting him based on facts which do not fit the legal definitions of the crimes charged.
14FORGERY
Louisiana Revised Statute 14:72 defines forgery as “the false making ..., with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.” Defendant seeks to add to this definition that the signature must be unauthorized. He contends, based on the facts alleged by the State and proven at trial, that (1) he authorized the imposter to sign his name, (2) the imposter thus did not commit forgery, and (3) therefore he could not be a principal to forgery. He'argues in brief that what he did “may be illegal or even criminal,” but if one authorizes another to sign his name for a fraudulent purpose, neither of them is guilty of forgery. He bases these contentions on the general civil rule of mandate that what one may do in person he may do through another as his agent. See La. C.C. art. 2985.
Defendant’s argument overlooks Louisiana Civil Code article 2987, which provides in pertinent part: “The object of the mandate must be lawful....”[4] The object of defendant’s “mandate” was to defraud the State and his children, and thus it was not valid. The acts of defendant’s accomplice fit the statutory definition of forgery: there was a false making of defendant’s signature, defendant and his accomplice intended to defraud the State and defendant’s children, and the GenTest consent form was a writing purporting to have legal efficacy.[5] Defendant both procured the accomplice to commit the crime and aided and abetted in its commission. He clearly was a principal to the crime of forgery, Revised Statute 14:24, and conspired with the accomplice specifically to commit this crime. La. R.S. 14:26(A). Thus, defendant’s assignments of error regarding the motion to quash the indictments for forgery and conspiracy to commit forgery, the legality of the jury verdict on those crimes, and the court’s refusal to give four special jury instructions on the law of mandate are without merit.
RFILING FALSE PUBLIC RECORDS
At the time the GenTest consent form was filed into the URESA suit record, Revised Statute 14:133(A)[6] defined filing false public records, in pertinent part, as
the filing or depositing for record with knowledge of its falsity, any of the following, in any public office ...:
(1) Any forged document.
[[Image here]]
(3) Any document containing a false statement or false representation of a material fact.
Defendant concedes his actions were in connection with a court-ordered blood test. He contends, however, that the form signed by the imposter was not a public document within the meaning of Revised Statute 44:1 because GenTest is a private testing laboratory and not a public body, and because the document was not a public record at the time it was forged. In support of this argument he cites the definition of “public body” found in Revised Statute 44:1(A)(1) and State v. Dewhirst, 527 So.2d 475 (La.App. 5th Cir.1988), writ denied, 535 So.2d 740 (La.1989), which discusses the public documents exception to the hearsay rule.
We find defendant’s citations inapplicable. The term “public records” is defined by Revised Statute 44:1(A)(2), as follows: “All books, records, writings, ... having been used, being in use, or prepared ... under the ... order of any public body_” The East Baton Rouge Parish Juvenile Court is a public body as defined by Revised Statute 44:1(A)(1). Fairchild testified she could not *70 have drawn the blood as ordered by the Juvenile Court judge had the consent form not been signed. Debbie O’Neill, a court enforcement officer for the East Baton Rouge Parish District Attorney’s office, testified consent forms must be filed in the court record to show the chain of custody, and she sent this particular consent form to the Clerk of Court to be filed, which was done on June 13, 1994. That the consent form had not been filed in the public record at the time it was forged is of no moment. Defendant knew his blood was to be drawn in accordance with a court order, and yet he aided and abetted his accomplice in depositing a forged 16document which was to be filed with a public office, the East Baton Rouge Parish Juvenile Court and conspired with the accomplice to do so. Thus, defendant’s assignments of error regarding the motion to quash the filing false records and conspiracy to file false records charges and the legality of the verdict on those charges has no merit.
JURY CHARGE ON CIRCUMSTANTIAL EVIDENCE
Defendant contends the trial court erred in failing to give a special jury charge which set forth the State’s burden of proof when the State’s case is based solely on circumstantial evidence.[7]
Louisiana Code of Criminal Procedure article 807 provides in pertinent part:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
We are unable to determine whether the fifth requested charge was included in the general charge because the general charge was not transcribed.[8] Defense counsel admits in brief the instruction may have been covered in the general charge. It is unnecessary for us to make this determination because the requested charge fails to meet the requirement of article 807 that it be pertinent.
The State’s case was not based solely on circumstantial evidence. The juvenile court judge’s order in the record shows defendant was ordered to submit to a blood test. Schilling testified he witnessed defendant introduce the imposter to Fairchild as “Wilbur Daigle.” Fairchild testified defendant told her ‘Wilbur Daigle” had been in an accident. Fairchild further testified she witnessed the imposter forge defendant’s name on the consent form. O’Neill testified the forged document was filed into the court record. Robert J. Muehlberger testified the signature on the ^document was a forgery. This is direct evidence, i.e., evidence which, if believed, proves a fact. State v. Bourque, 622 So.2d 198, 244-245 (La.1993). Thus, defendant’s requested jury charge on the State’s burden of • proof when its case is based solely on circumstantial evidence is not pertinent. Defendant’s assignment of error regarding the trial court’s failure to give this jury charge is without merit.
Accordingly, defendant’s convictions are affirmed.
AFFIRMED.

. Robert J. Muehlberger, a forensic document analyst who examined the signature on the consent form, testified not only was the signature not genuine, but defendant's first name was misspelled and "Jr." was added.

. The test showed there was a 99.999% likelihood defendant was the father of Allison and a 99.994% likelihood he was the father of Jason. The difference in the figures is attributable to Allison inheriting a rare gene from defendant.

. See also Louisiana Civil Code article 1966, which provides: "An obligation cannot exist without a lawful cause.”

. Defendant does not contest that this writing purported to have legal efficacy. We note the Reporter's Comments to Revised Statute 14:72:
“All writings of serious enough nature to be considered subject matter of this crime 'purport to have legal efficacy.' ”

. Revised Statute 14:133(A) was amended by Acts 1995, No. 787, § 1.

. The requested charge read: “When the State's case is based on circumstantial evidence, the statutory rule of R.S. 15:438 provides that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”

. The record contains the following: “Reporter's note: At this time the closing arguments by counsel and the judge’s instructions to the jury will not be made a part of this transcript as there were no objections or assignments of error noted.” The minutes, however, state: “Out of the presence of the jury, the Defense reurged a previous objection as to special jury instructions.”