772 So.2d 200 (2000)
STATE of Louisiana
v.
Jerry CARPENTER.
No. KA00-436.
Court of Appeal of Louisiana, Third Circuit.
October 18, 2000.
*202 Michael Harson, Assistant District Attorney, District Attorney's Office, Lafayette, Louisiana, Counsel for State/Appellee.
C. Michael Hill, Lafayette, Louisiana, Counsel for Defendant/Appellant.
(Court composed of Judge BILLIE COLOMBARO WOODARD, Judge OSWALD A. DECUIR, and Judge JIMMIE C. PETERS).
WOODARD, Judge.
In this criminal litigation, a former Chief of Police, Mr. Jerry Carpenter (Chief Carpenter) appeals his convictions for malfeasance in office and for filing a false report. Essentially, he claims that the State's evidence was insufficient to convict him. On the contrary, we find that the State proved, beyond a reasonable doubt, its case regarding his malfeasance conviction, which is based on tampering with evidence, and affirm.
Regarding the filing of a false public record conviction, the trial court did not find that Chief Carpenter actually filed a false report, but that he aided and abetted or, at least, allowed the report to be filed and, thus, became a principal of the filing a false public record crime. We affirm his conviction.

* * * * *
On April 18, 1996, Officer Nathan Broussard of the Scott Police Department (SPD) patrolled Interstate 10 (I-10), with an operating camera installed aboard his police unit to record the events occurring during his shift. At approximately 5:50 p.m., he stopped a Lincoln Towncar (the Towncar) for a traffic violation. The three individuals present in the TowncarMr. Billy Nguyen, the driver, and his two passengers, Mr. Hoan Tuan Nguyen and Mr. Van Bvi Phongprovided inconsistent accounts regarding their whereabouts, which triggered Officer Broussard's suspicion. As a result, he sought and obtained their permission to search the Towncar.
Meanwhile, Reserve Officer Robinson Olivero and Officer Brent Breaux reported to the scene and searched the Towncar. Officer Broussard described it as being thorough and provided details regarding the underneath of the driver's seat and the trunk liner's inspection. Their search proved fruitless. Notwithstanding, the three occupants revealed that they had $20,000.00 in cash in a jacket on the Towncar's back seat. And, Officer Breaux found a sack, containing approximately $30,000.00, in a suitcase in the car's trunk. The Officers later counted a total amount of approximately $55,000.00.
Suspecting that the money could possibly be related to a drug transaction, the Officers decided to search the vehicle further, at the police station, away from traffic. The three occupants agreed to follow the officers to the SPD, driving the Towncar. They reached the SPD around 7:30 p.m., and Officer Broussard parked his unit behind the Towncar, with the camera still operating. Trooper Lam Nguyen reported to the SPD to serve as an interpreter. Before Officer Broussard interviewed any of the three suspects, he asked Officer Breaux to watch the Towncar.
After he conducted the first interview, Officer Broussard walked outside of the SPD to check on Officer Breaux, whom, he realized, had left his post. Officer Broussard learned that Officer Breaux had been assigned to patrol duties. He requested that Sergeant Romero or Chief Carpenter *203 take over the Towncar's watch and returned to the interview room.
Meanwhile, Sergeant Romero, who proceeded to run a "drug dog" on the Towncar, allegedly, immediately obtained a "hit" on the driver's side and trunk areas, apparently indicating the presence of drugs. Sergeant Romero, allegedly found marijuana under the driver's seat, and Chief Carpenter claimed that he found a bag of a white powdery substance in the trunk, underneath the trunk's liner, in an area which Officer Broussard specifically remembered having searched. Subsequently, the three individuals were placed under arrest.
Thereafter, Officer Broussard went home and became curious to discover where Chief Carpenter and Sergeant Olivero had found the contraband. Immediately, he viewed the videotape (the videotape) which the camera, located on his unit, had produced. The tape had properly recorded the events. He fast-forwarded it to the time of the second search that Chief Carpenter and Sergeant Romero had conducted. He explained that the videotape showed Chief Carpenter walking toward the Towncar's open trunk with his hand cradled as if it contained something. Chief Carpenter looked around, bent down, appeared to place something in the trunk, and left the scene. Shortly thereafter, he reappeared within the camera's scope, motioning other people to follow him towards the Towncar, and more specifically, its trunk. Then, he bent down again, immediately removed a bag, containing a powdery white substance.
Officer Broussard showed the tape to his friend, Deputy Michael Collins, who, in essence, corroborated his depiction of the taped events. Moreover, Ms. Stephanie Dawn Simon, Officer Broussard's former girlfriend, also viewed the tape and essentially corroborated his description. Interestingly, another SPD member, Sergeant Darrell Broussard, testified that Chief Carpenter reached under the trunk's liner "real quick" when pulling out the white powder bag.
After a failed forfeiture proceeding instigated by the SPD, the State became aware of evidence, indicating that Chief Carpenter had "planted" the white powder in the car's trunk. A State investigation ensued, revealing among other things, that all but approximately twelve minutes of the videotape had been erased, and it no longer showed the event which took place at the police station during the evening. Similarly, and oddly, a laboratory analysis performed on the white powdery substance which Chief Carpenter allegedly found in the Towncar, revealed the absence of any illegal content. Eventually, the bag disappeared at some time before trial.
The State charged Chief Carpenter, by bill of indictment, with one count of filing a false public record[1] and four counts of malfeasance in office for tampering with evidence.[2] After a three-day bench trial, which began on December 21, 1998, the trial court found Chief Carpenter to be guilty as charged regarding the filing of a false public record count and for one of the malfeasance counts. The court granted his motion for a judgment of acquittal on the other three malfeasance counts.
On December 22, 1998, Chief Carpenter moved for a post-verdict judgment of acquittal and for a new trial, which the trial court denied on April 5, 1999. After he waived sentencing delays, the court sentenced him to three years on each count, concurrent. It suspended each sentence, with the condition that he serve one year in the Parish Jail and the two remaining years on supervised probation. Chief Carpenter did not move for sentence reconsideration. However, he appeals.

ERRORS PATENT
First, the trial court imposed an illegally lenient sentence upon Chief Carpenter *204 when it placed him on supervised probation without following La.Code Crim.P. art. 895(A) requirements. However, we do not recognize this trial court's error because the State does not claim any resulting prejudice.
Second, the trial court failed to inform Chief Carpenter of the two-year prescriptive period for filing post-conviction relief as La. Code Crim.P. art. 930.8 requires. Accordingly, we remand the case to the trial court with an instruction to send appropriate written notice of Article 930.8's provisions to Chief Carpenter within ten days of this opinion's rendition. We request that the trial court also file written proof that Chief Carpenter received the notice in the record of the proceedings.[3]

SUFFICIENCY OF THE EVIDENCE
Chief Carpenter claims that the trial court erred when it found that the State had presented sufficient evidence to convict him. Sufficiency of the evidence attacks are viewed on appeal under the Jackson v. Virginia[4] standard, which in essence requires that we uphold a trial court conviction if, after viewing the evidence in the light most favorable to the prosecution, we find that the State proved the elements of the crimes beyond a reasonable doubt. When deciding the issue, we may not assess the witnesses' credibility or find that the conviction is contrary to the weight of the evidence.[5] In State v. Tassin,[6] we explained that "[i]t is the role of the fact finder to weigh the respective credibilities [sic] of the witnesses. The appellate court should not second guess the credibility determinations of the trier of fact beyond the application of the sufficiency evaluations allowed under the Jackson standard of review."
Chief Carpenter directed his insufficiency claim to both his malfeasance and filing a false report convictions; hence, we review each claim separately.

Malfeasance
The trial court convicted Chief Carpenter of malfeasance in office under La. R.S. 14:134.2(A), which provides, in pertinent part, that "[i]t shall be unlawful and constitute malfeasance in office for a peace officer to tamper with evidence." Additionally, La. R.S.14:134.2(A)(2) specifies that tampering with evidence consists of the following:
For purposes of this Section, "tampering with evidence" is the intentional alteration, movement, removal, or addition of any object or substance when the peace officer:
(a) Knows or has good reason to believe that such object or substance will be the subject of any investigation by state, local, or federal law enforcement officers, and
(b) Acts with the intent of distorting the results of such an investigation.
The State prosecuted Chief Carpenter for planting a white powdery substance, purporting to be a controlled dangerous substance, in the Towncar's trunk. During trial, Officers Broussard and Olivero both testified that they searched the Towncar, with Officer Olivero re-searching behind Officer Broussard, as he progressed through the vehicle. Neither man found any contraband. Their testimony unequivocally established that they had searched both areas where Chief Carpenter and Sergeant Romero, allegedly, had found the contraband.
Chief Carpenter's counsel attempted to impeach Officer Broussard's credibility during trial, but did not seriously attack *205 Officer Olivero's, whose testimony corroborated Officer Broussard's. The trial court apparently chose to believe Officers Broussard's and Olivero's testimonies, which established that the Towncar did not contain any illegal substance at the time of their road search.
Furthermore, Officer Broussard also testified of the videotape's content, which he believed showed Chief Carpenter planting something in the Towncar's trunk, then motioning other officers to come toward the trunk. Having also watched the videotape before its content became unexplainedly altered, Deputy Collins essentially corroborated Officer Broussard's perception. He testified that Chief Carpenter approached the Towncar's trunk, carrying some sort of package approximately six inches long, although he could not tell exactly what it was. Finally, and although she did not see Chief Carpenter carrying any physical object in his hands, Ms. Simon testified that he appeared to be carrying something, but had his back turned to the camera. She also remembered Chief Carpenter initially going toward the Towncar's trunk, looking around, before bending towards it. The Defense did not seriously attack either Ms. Simon's or Deputy Collin's credibility. Based on all of this evidence, we find that the State's case passes the Jackson v. Virginia standard.
Notwithstanding, Chief Carpenter also argues that the State's case relies on circumstantial evidence; hence, it should fail as it did not exclude, as required, every reasonable hypothesis of innocence.[7] He asserts that neither the State showed, nor did he, in fact, have any motive to plant the white powder bag in the Towncar's trunk. We find this objection irrelevant, as motive does not constitute one of the crime's elements.[8]
Finally, he urges that the State failed to prove that he was "commissioned" as required for conviction under La. R.S. 14:134.2. He presented this claim to the trial court in a post-verdict judgment of acquittal motion, which the trial court denied. The trial court stated that uncontradicted evidence presented at trial established Chief Carpenter's status as the elected Scott police chief.
Article 14:134.2(A)(1) provides, in part, that a "peace officer shall be defined as a commissioned state, parish, municipal police officer, a sheriff, or deputy sheriff." Numerous witnesses during Chief Carpenter's trial, including his own son, referred to, and identified him as `Chief Carpenter,' as did his attorney in his appellate brief. Further, the Mayor of Scott testified that the chief of police position in Scott requires election.
Chief Carpenter does not assert that the State failed to prove that he served as a "peace officer," rather, he essentially argues that it failed to prove that he received a "commission" within the meaning of the statute. Although he does not allege that he was not, in fact, so commissioned, he insists that we should reverse his conviction because the State failed to introduce his oath of office or the "commission issued by the Secretary of State to all elected public officials."
Regarding elections and commissions, La. R.S. 18:513(A) states, in pertinent part:
Certification of candidates elected for a full term. Within thirty days after the date on which a general election is scheduled to be held, the secretary of state shall certify the name of each candidate elected for a full term to the appropriate official in the following manner.
. . . .

*206 (5) The name of a candidate elected to any other office, except governor or lieutenant governor, shall be certified to the governor, who shall issue a commission to the elected official on the date the term begins as provided by law or the home rule charter or plan of government.
Additionally, La. Const. art. X, § 30 mandates that every public official shall take an oath of office. Further, La. R.S. 42:141 requires a public officer to take the required oath within thirty days of receiving the commission and states that failure to timely do so creates a vacancy in the office. No such vacancy was alleged in the Defendant's case.
La. Const. art. IV, § 7 states, in pertinent part:
There shall be a Department of State. The secretary of state shall head the department and shall be the chief election officer of the state.... He shall administer the state corporation and trademark laws; serve as keeper of the Great Seal of the State of Louisiana and attest therewith all official laws, documents, proclamations, and commissions; administer and preserve the official archives of the state; promulgate and publish all laws enacted by the legislature and retain the originals thereof; and countersign and keep an official registry of all commissions. He may administer oaths, and shall have other powers and perform other duties authorized by this constitution or provided by law.
Under this constitutional mandate, the Secretary of State maintains a comprehensive listing of all elected officials, including the Scott Police Chief, at http:// www.state.la.us>. According to this official governmental data base, which the Secretary of State maintains, Chief Carpenter was listed as the commissioned Scott Police Chief at the time of the offense. La. Code Evid. art. 201 allows us to take judicial notice of certain facts, whether requested or not. Accordingly, we note that the Fifth Circuit has taken judicial notice of information contained in official government Internet websites, and so do we.
It is also noteworthy that throughout the trialover no objectionthe Defendant was referred to as "Chief Carpenter," in the context of the exercise of his police function. In fact, his own son and counsel referred to him as "Chief Carpenter."
Taking this admission into consideration, as well as taking judicial notice of the Secretary of State's official governmental website, we conclude that the trial court did not err in finding this element of the offense to be proven.
Therefore, after conducting a thorough review of the record, we conclude that the State proved, beyond a reasonable doubt, that Chief Carpenter planted the white powder bag in the Towncar's trunk and that he was the commissioned Scott Police Chief. Accordingly, we affirm the trial court's decision.

Filing a False Report
Defendant's last contention concerning this offense is that the State failed to prove that the report contained a false statement or false representation of material fact, pursuant to La. R.S. 14:133(3), which provides:
Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following (Emphasis added):
(1) Any forged document.
(2) Any wrongfully altered document.
(3) Any document containing a false statement or false representation of a material fact.

The State demonstrated that the Chief Carpenter planted white powder in the "suspects" car. Clearly, this illegal action was the sine qua non of the false report, and, as Chief of Police, he had to have known that the "suspects" would be arrested on suspicion of possession of illegal *207 drugs and, thus, that such a report would be filed. These key points support the lower court's conclusion that he "aided and abetted" the filing of the false report.[9] La. R.S. 14:24 states that:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Further, under this statute, Chief Carpenter was a principal to the filing of the false report.[10]
In our analysis, we consider State v. Durham.[11] In that case, the Defendant was convicted as a principal to the actions of a subordinate who falsified documents. The appellate court concluded that Durham was a supervisor who concerned herself with "the big picture" and not the details of management and reversed her convictions, finding there was no showing of any connection between her and the subordinate's actions.[12] However, the present case is distinguishable from Durham. The case sub judice is not a situation involving Chief Carpenter's management duties. Rather, he clearly had direct involvement in creating the falsity. He planted the evidence, upon which the false report was predicated. Further, given his position and experience as Chief, he had to have known that a false report would be prepared and filed based upon this false evidence and that both the false evidence and false report would be employed to support the improper arrests of the three "suspects."
We find Chief Carpenter questioning, as to whether he could have been a principal to Nathan Broussard's "innocent" actions, to be disingenuous at best. Broussard did not turn in his report until the morning after he viewed the videotape which revealed Chief Carpenter's nefarious deed. The record establishes that when Broussard filed the report, he had full knowledge of the illicit circumstances surrounding it and knew of its consequences and of its falsity. He had arrested the three "suspects" and transported them to jail the night before he turned in the report and later testified at the forfeiture hearing without acknowledging the report's falsity.
Moreover, as Chief of Police, Chief Carpenter maintained, in his department, a document, containing a false statement, or false representation of a material fact, with knowledge of the falsity. This is a direct violation of the statute, as well.
His contention has no merit. Accordingly, we affirm this conviction.

POLYGRAPH EVIDENCE
Chief Carpenter argues that the lower court erred when it denied his motion in limine, requesting the admission of polygraph evidence. He relies on State v. Robertson,[13] which found polygraph tests admissible, even in a capital murder's penalty phase. The Robertson court decided that polygraph tests present some adverse effects on a lay jury, but found that it may be admissible to assist district judges in post-trial proceedings.[14] Chief Carpenter argues that polygraph evidence should be admissible in the instant case because a bench trial is much like a post-trial proceeding, as there is no lay jury involved. He insists that unlike a jury, a judge is less likely to be unduly influenced by such evidence.
As a general rule, a trial court has wide discretion when deciding the admissibility *208 of such evidence; hence, we will not reverse its decision absent finding an abuse of discretion.[15] Without having to answer the merit of Chief Carpenter's argument. Our overwhelming jurisprudence regards polygraph evidence as being inadmissible; hence, the trial court's decision did not amount to an abuse of its discretion. Accordingly, we affirm.

EXCESSIVE SENTENCE
Chief Carpenter argues that the trial court's sentences are excessive and mandate reversal. Nevertheless, our review reveals that he did not file either an oral or written motion to reconsider his sentences. When such is the case, La. Code Crim.P. art. 881.1 unambiguously precludes a defendant from later objecting to the sentence or urging any ground not raised in the motion to reconsider, whether on appeal or review.
Accordingly, we find that Chief Carpenter did not preserve his claim for appeal.

CONCLUSION
We find that the State proved beyond a reasonable doubt that Chief Carpenter committed the crime of malfeasance in office and affirm his conviction on this ground. We find that the State did prove beyond a reasonable doubt that he committed the crime of filing false public record, and we affirm this conviction.
We also find that the trial court failed to inform Chief Carpenter of the two-year prescriptive period for filing post-conviction relief; thus, we remand the case to the court with instructions that it send appropriate written notice within ten days of the rendition of this opinion and file written proof that Chief Carpenter received the notice in the record of proceedings. Our resolution of the previous issues pretermits discussion of any other issues which Chief Carpenter's brief raised.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] A La. R.S. 14:133 violation.
[2] A La. R.S. 14:134.2 violation.
[3] State v. Fontenot, 616 So.2d 1353 (La.App. 3 Cir.), writ denied, 623 So.2d 1334 (La.1993).
[4] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[5] State v. Mussall, 523 So.2d 1305 (La.1988).
[6] 472 So.2d 340 (La.App. 3 Cir.), writ denied, 477 So.2d 97 (La.1985) (citation omitted).
[7] La. R.S. 15:438; State v. Bullitts, 99-515, p. 3 (La.App. 3 Cir. 11/3/99); 746 So.2d 260, 262.
[8] State v. Parker, 95-1458 (La.App. 3 Cir. 8/28/96); 679 So.2d 1029, writs denied, 96-2399 (La.2/21/97); 688 So.2d 522, 96-2477 (La.9/5/97); 700 So.2d 501.
[9] La. R.S. 14:24.
[10] See State v. Durham, 32-154 (La.App. 2 Cir. 8/20/99); 748 So.2d 1, writ denied, 1999-2959 (La.4/7/00); 759 So.2d 91.
[11] Id.
[12] Id. at 8-9.
[13] 97-177 (La.3/4/98); 712 So.2d 8, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998).
[14] Id. at 36.
[15] State v. Dugas, 96-49, p. 13 (La.App. 3 Cir. 10/9/96); 683 So.2d 1253, 1260, writ denied, 96-2652 (La.4/4/97); 692 So.2d 417, citing State v. Mayeaux, 570 So.2d 185 (La.App. 5 Cir.1990), writ denied, 575 So.2d 386 (La. 1991).