HIGGINBOTHAM, J.
li>The defendant, Gerard J, Bourgeois, was charged by amended grand jury indictment with one count of filing false public records (count I), a violation of La. R.S. 14:133; and one count of forgery (count II), a violation of La. R.S. 14:72; and pled not guilty on both counts. Following a jury trial, he was found guilty as charged on both counts. On each count, the defendant was sentenced to five years at hard labor, suspended, and five years probation, with the sentences to run concurrently with each other. Further, as special conditions of the probation associated with the forgery conviction, the defendant was ordered to pay a $500.00 fine and make $75,000.00 restitution to the victim. The defendant now appeals, raising three assignments of error. For the following reasons, we reverse the conviction and vacate the sentence on count I, and we affirm the conviction and sentence on count II.

FACTS

Southeast Investments (“Southeast”) was in the business of purchasing nonperforming real estate loans. In early 2010, Southeast was the highest bidder on a $2.8 million loan for property in Coving-ton. The loan was secured by a March 13, 2007 promissory note by 1102 North Highway 190, LLC (“1102”), signed by the defendant and personally guaranteed by him. Acting through its attorney, Gary Duple-chain, Southeast notified the defendant that it was now the holder of the note and that he owed it $2,887,750.40. The defendant failed to pay the debt. Thereafter, on March 23, 2010, Southeast gave the defendant the option of signing the proper *228 ty over by an Act of Giving in Payment in lieu of “going after his personal guarantee.”
The State and the defense stipulated: the defendant was the manager and only officer of 1102; the defendant received an Act of Giving in Payment from Gary laDuplechain; on April 19, 2010, the defendant signed a five-page Act of Giving in Payment, after “revising” the document, and returned it to Duplechain; and the five-page Act of Giving in Payment contained no signature when received by the defendant.
Joseph Brent Powell, project manager for Southeast, testified that the Act of Giving in Payment sent to the defendant accurately reflected what he and the defendant had agreed to do in the weeks prior to March 23, 2010. During that period, there was never any discussion of Southeast paying $975,000.00 to the defendant, and Powell would not have agreed to such a condition. The defendant changed the font and/or margins of page 3 of the Act of Giving in Payment, retyped the page inserting “as additional consideration for the giving in payment herein, Southeast agrees to pay 1102 $975,000.00,” and signed and returned the document to Southeast. Additionally, the defendant crossed out and initialed changes on pages 4 and 5 of the document and wrote “This offer by 1102, will expire and be null and void if not excepted [sic] in writing by Southeast, on or before April 28, 2010,” on the top of page 5, Southeast reviewed the obvious changes to the document on pages 4 and 5, found they did not affect its position, and signed and recorded the document. Thereafter, the defendant hired an attorney and demanded Southeast pay him $975,000.00. He also filed for bankruptcy protection. On June 28, 2011, in order to clear the title to the property so Southeast could honor an obligation it had undertaken concerning the property, Southeast paid the defendant $75,000.00.
Aaron Cross, a commercial real estate representative of twenty-five years, testified, as a real estate broker, his primary obligation when making a counteroffer was to make sure any changes to the document were “crystal clear.” He indicated he preferred to use addendums, “spelled out in a separate document.”
1 SUFFICIENCY OF THE EVIDENCE
In assignment of error number 1, the defendant argues the evidence was insufficient to support his conviction for forgery because he did not attempt to pass off his signature as that of someone else. In assignment of error number 2, the defendant argues the evidence was insufficient to support his conviction for forgery because the proposed Act of Giving in Payment was not a document having legal efficacy. In assignment of error number 3, the defendant contends the evidence was insufficient to support his conviction for filing false public records because he neither filed the Act of Giving in Payment, nor caused it to be filed.
The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant’s identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana’s circumstantial evidence test, which states in part, “assuming every fact to be proved that the evidence tends to prove,” in order to convict, every reasonable hypothesis of innocence is excluded. State v. Wright, 98-0601 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 & 2000-0895 *229 (La.11/17/00), 773 So.2d 732 (quoting La. R.S. 15:438).
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential | .¡¡element of the crime. Wright, 730 So.2d at 487.
As to the forgery count, we examine the language of La. R.S. 14:72, which provides in pertinent part:
A. It shall be unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy.
B. Issuing, transferring, or possessing with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute a violation of the provisions of this Section.
C. For purposes of this Section:
(1) “Forge” means the following:
(a) To alter, make, complete, execute, or authenticate any writing so that it purports:
(iii) To be a copy of an original when no such original existed.
(b) To issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged in accordance with the meaning of Subpara-graph (l)(a).
(c) To possess a writing that is forged within the meaning of Subparagraph (1)(a).
(2) “Writing” means the following:
(a) Printing or any other method of recording information^]
[Emphasis added.]
As to the filing of false records count, we further consider the language- of La. R.S. 14:133, which provides in pertinent part:
A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:
(1) Any forged document.
(2) Any wrongfully altered document.
[Emphasis added.]
| (¡Louisiana Revised Statutes 14:133 does not require that the record filed be “public” but that it must be filed or deposited, with knowledge of its falsity, “in any public office or with any public officer.” State v. Salat, 95-0072 (La.App. 1st Cir.4/4/96), 672 So.2d 333, 337, writ denied, 96-1116 (La.10/4/96), 679 So.2d 1378 (emphasis in original).
Initially we note, contrary to the defendant’s argument, forgery is not limited to altering, with intent to defraud, any signature, but rather includes altering, with intent to defraud, any part of any writing purporting to have legal efficacy. See La. R.S. 14:72(A). In the instant case, the defendant’s intent to defraud was evidenced by the manner in which he changed the Act of Giving in Payment. He made minor changes on pages 4 or 5 by crossing out existing text, adding language, and initialing the changes. However, he concealed his addition of language requiring Southeast to pay him $975,000.00 by recreating page 3 with a new font and/or margins without giving any indication of this major change.
*230 We also reject the defendant’s argument that the proposed Act of Giving in Payment was not a document having legal efficacy. Efficacy is defined as the “[p]ower or capacity to produce the desired effect” or the “ability to achieve results.” See State v. Gordon, 95-1247 (La. App. 4th Cir.1/19/96), 668 So.2d 462, 464, writ granted on other grounds, 96-0427 (La.5/10/96), 672 So.2d 669 (quoting The American Heritage Dictionary of the English Language (New York 1973)). The Reporter’s Comment accompanying La. R.S. 14:72 makes clear that it is not necessary for the forged writing to be one that, if genuine, would be a basis for legal liability. To the contrary, according to the commentator, “purporting to have legal efficacy” should be broadly construed. See Gordon, 668 So.2d at 464 (quoting Reporter’s Comment — 1950 to La. R.S. 14:72). Further, “[a]ll writings of serious 17enough nature to be considered subject matter of this crime ‘purport to have legal efficacy.’ ” Reporter’s Comments — 1950 to La. R.S. 14:72. Any falsification or fraudulent alteration of a writing “done with intent to defraud” would satisfy the elements of the crime of forgery. See Reporter’s Comments — 1950 to La. R.S. 14:72.
Any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant altered a part of the original Act of Giving in Payment with intent to deceive. The state is “only required to prove that the defendant intended to defraud someone.” State v. Watkins, 532 So.2d 1187, 1189 (La.App. 1st Cir.1988). The verdict rendered against the defendant indicates the jury accepted the testimony offered against the defendant and rejected his defense that he had no intent to deceive, but rather altered the document to make a counteroffer. The criminal intent required for forgery is the intent to defraud any person, and it suffices if the forged or altered instrument has prejudiced or might prejudice the rights of another. See State v. Satchfield, 35, 631 (La. App. 2d Cir.8/14/02), 824 So.2d 537, 540-541. The specific intent required for forgery is a state of mind and need not be proved as a fact but may be inferred from the circumstances and transactions of the case. Id., 824 So.2d at 541. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. See State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987). No such hypothesis exists in the instant case.
Further, this court will not assess the credibility of witnesses or reweigh the [8evidence to overturn a fact finder’s determination of guilt. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429 (La.App. 1st Cir.3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La.10/17/97), 701 So.2d 1331. Additionally, in reviewing the evidence, we cannot say the jury’s determination was irrational under the facts and circumstances presented to them. See State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby over *231 turning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See State v. Calloway, 2007-2806 (La.1/21/09), 1 So.3d 417, 418 (per curiam). Thus, we find no error in the jury’s guilty verdict as to the forgery count.
However, we conclude that no rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant “filed” the altered Act of Giving in Payment. The State argued to the jury that the defendant violated La. R.S. 14:133 by altering the Act of Giving in Payment with knowledge that “it would be filed” in the public records.
In State v. Carpenter, 2000-436 (La.App. 3d Cir.10/18/00), 772 So.2d 200, 202, writ denied, 2000-3152 (La.1/25/02), 806 So.2d 665, the defendant, a former Chief of Police, appealed his convictions for malfeasance in office and for filing a false report after planting evidence in a suspect’s car. In concluding the 19evidence supported the trial court’s conclusion that the defendant had aided and abetted in the filing of the false report, the court in Carpenter found the defendant had direct involvement in creating the falsity by planting the evidence upon which the false report was predicated, and “given his position and experience as Chief, he had to have known that a false report would be prepared and filed based upon this false evidence and that both the false evidence and the false report would be employed to support the improper arrests of the three ‘suspects.’ ” Id. at 206-07. The court in Carpenter specifically rejected the defendant’s claim that the officer who actually “turn[ed] in” the false report, the defendant’s accomplice, acted innocently. Id. at 207.
In this case, the State erred in relying on Carpenter for the theory that mere knowledge by the instant defendant that the altered Act of Giving in Payment “would be filed” violated La. R.S. 14:133. Carpenter and the other case referenced by the State on appeal, State v. Daigle, 95-2393 (La.App. 1st Cir.9/27/96), 681 So.2d 66, 69-70, involved situations where an accomplice, with full knowledge of the forged nature of a document, filed the document.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24. However, the defendant’s mere presence at the scene is not enough to “concern” him in the crime. State v. Neal, 2000-0674 (La.6/29/01), 796 So.2d 649, 659, cert, denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). Only those persons who knowingly participate in the planning or execution of a crime may be said to be “concerned” in its commission, thus them liable as principals. Id. A principal may be 1 inconnected only to those crimes for which he has the requisite mental state. Id. In the instant case, Southeast was a victim of, rather than an accomplice to, the defendant’s actions and would not have filed the altered Act of Giving in Payment had it been aware of the defendant’s fraudulent alteration to the original.
It is well accepted that criminal statutes are strictly and narrowly construed, with any ambiguity resolved in favor of the accused. State v. Williams, 2000-1725 (La.11/28/01), 800 So.2d 790, 800. The articles of the criminal code cannot be extended by analogy so as to create crimes not provided for therein. La. R.S. 14:3. The State’s theory expanded the scope of *232 La. R.S. 14:133 beyond its clear text. Thus, we find the defendant’s assignments of error have merit in part, and we accordingly reverse the conviction and vacate the sentence on count I, for the filing of false public records.[1] However, we find the evidence was sufficient to sustain the guilty verdict on count II, for the forgery, beyond a reasonable doubt. Accordingly, we affirm the conviction and sentence on count II.
CONVICTION REVERSED AND SENTENCE VACATED ON COUNT I; CONVICTION AND SENTENCE AFFIRMED ON COUNT II.

. See State v. Odom, 2007-0516 (La.App. 1st Cir.7/31/08), 993 So.2d 663, 667 (per curiam) (the first element of La. R.S. 14:133 is "the defendant files or deposits for record in any public office or with any public official!;]”) State v. Morris, 2005-725 (La.App. 3d Cir. 12/30/05), 918 So.2d 1107, 1112-13 (conviction and sentence for filing false public records vacated and set aside because the defendant "merely contacted police, but did not actually file or deposit for record any document in any public office or with any public official.”).