PER CURIAM.
hln cross applications to this Court, the state and defendant seek review of the First Circuit’s decision in State v. Bourgeois, 12-0916 (La.App. 1 Cir. 2/15/13), 113 So.3d 225, affirming defendant’s conviction and sentence for forgery in violation of La.R.S. 14:72, but reversing his conviction and sentence for filing false public records, in violation of La. R.S. 14:133, although the false public record was the same document *562 subject to the forgery. The state contends the court of appeal erred in finding it did not prove beyond a reasonable doubt defendant was guilty as a principal to the filing of a false public record, and defendant argues the state did not prove he committed a forgery. For the reasons that follow, we grant both applications, affirm the court of appeal’s decision upholding defendant’s conviction and sentence for forgery, but reverse its decision with respect to the filing of false public records and reinstate defendant’s conviction and sentence for that offense.
li>The circumstances giving rise to the present case are not disputed, although the parties hotly contest the legal implications of defendant’s conduct. In early 2010, Southeast Investments (“Southeast”), a company specializing in purchasing nonperforming real estate loans, became the highest bidder on a $2.8 million loan obtained in return for a promissory note executed by 1102 North Highway 190, LLC (“1102”), signed and personally guaranteed by defendant, manager and sole officer of 1102. The loan was secured by a mortgage taken out on property in Coving-ton, Louisiana. After Southeast made an unsuccessful demand for repayment of the loan, the company provided defendant the option of transferring the land used to secure the loan to Southeast through an “Act of Giving in Payment.”
After receiving a document to execute for the transfer of the property to Southeast, defendant “revised” it, both obviously and less so. He crossed out paragraphs and inserted handwritten language on pages four and five of the document, initialing each change. Defendant also retyped page three, retaining all of its provisions but inserting the phrase, "... as additional consideration for the giving in payment herein, Southeast agrees to pay 1102 $975,000.00.” The revision came at the end of the paragraph which acknowledged that defendant was unable to pay the principal and interest on the promissory note and that he was transferring the property to Southeast in payment of the debt. Defendant took special care to adjust the font and margin spacing of the retyped page so that even with the insertion of the additional language, the text on page three continued onto page four without a break, as if page three remained unchanged, and the slight modifications in font and margins would become apparent only in a careful side-by-side comparison of page three with pages two and four. On the top of page five, defendant wrote: “This offer by 1102 will expire and be null and void if not |aexcepted [sic] in writing by Southeast, on or before April 28, 2010.” He then signed the document in the presence of a notary and returned it to Southeast.
Southeast reviewed the document, noted the obvious handwritten changes on pages four and five, which did not appear to substantially alter Southeast’s position in the settlement. Accordingly, Gary Duple-chain, Southeast’s attorney, signed and notarized the document on April 26, 2010, and then recorded the document with the Clerk of Court for St. Tammany Parish. Thereafter, defendant demanded Southeast pay him the $975,000 called for in the revised document that it had signed. To clear title to the property and thereby honor an obligation it had undertaken concerning the property, Southeast paid defendant $75,000.
The state thereafter instituted criminal proceedings against defendant. Following a trial by jury, defendant was found guilty as charged of forgery and filing false public records. The trial court sentenced him on each count to concurrent terms of five years’ imprisonment at hard labor, suspended, and five years’ probation.
*563 Defendant appealed, arguing relative to the forgery count that while he may have engaged in sharp business practices by camouflaging the critical additional term on page three, he did not attempt to pass off his signature as that of someone else when he signed the Act of Giving in Payment, and Southeast had engaged in slack business practices by failing to read the revised document in its entirety, and then sought to make up for its own negligence by enlisting the District Attorney to initiate prosecution for what was an entirely civil matter. Defendant further argued that until Southeast signed the revised document, the proposal set out in the Act of Payment in Giving did not purport to have legal efficacy for purposes of La.R.S. 14:72 because it was merely a counter offer to Southeast’s original offer and had no legal effect until it was signed by both parties and became a contract.
|4The court of appeal noted, however, that defendant had essentially made the same argument to jurors and that they had rejected it. The court further noted that the term “purporting to have legal efficacy” in La.R.S. 14:72, to describe those writings which may be subject to forgery, should be broadly, not narrowly, construed, and that “[a]ny falsification or fraudulent alteration of a writing ‘done with intent to defraud’ would satisfy the elements of the crime of forgery.” Bourgeois, 12-0916 at 6-7, 113 So.3d at 230 (citing Reporter’s Comment — 1960) (“ ‘[Pjurporting to have legal efficacy’ should be broadly construed ... [I]t is not necessary for the forged writing to be one that, if genuine, would be a basis for legal liability.... If the writing could be used as proof in a lawsuit it would be susceptible to forgery.”). Citing to the specific definition of forgery in La.R.S. 14:72(C)(l)(a)(iii),[1] as the alteration of any writing, or any part of a writing, so that it purports “[t]o be a copy of an original when no such original existed,” the court of appeal found that “[a]ny rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant altered a part of the original Act of Giving in Payment with intent to deceive.” Bourgeois, 12-0916 at 7, 113 So.3d at 230. Affirming defendant’s conviction and sentence on this count, the court of appeal applied the settled principle of appellate review that “[w]hen a case involves | .^circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and he defendant is guilty unless there is another hypothesis that raises a reasonable doubt.” Id. (citation omitted).
With respect to defendant’s conviction for filing false public records, while the evidence supporting defendant’s conviction for forgery also satisfied a requisite ele *564 ment of La.R.S. 14:133 that the document filed in a public office was “forged” or “wrongfully altered,”[2] the court of appeal agreed with defendant that the state had failed to satisfy the element of “filing or depositing,” because he did not file, or cause to be filed, the document detailing the property transfer. Instead, Southeast had filed the Act of Giving in Payment of its own accord with the Clerk of Court. Although the court of appeal readily acknowledged that “[a]ll persons concerned in the commission of a crime” are principals, La.R.S.14:24, the court concluded that no rational trier of fact, even viewing the evidence in a light most favorable to the prosecution, could find beyond a reasonable doubt that defendant “filed” the altered Act of Giving in Payment. The state had argued that defendant violated La.R.S. 14:133 by altering the terms of the agreement with knowledge that it “would be” filed and recorded, and was thus a principal in the offense, but the court of appeal observed that Southeast “was a victim of, rather than an accomplice to,” defendant’s actions, and that the state’s theory “expanded the scope of La.R.S. 14:133 beyond its clear text.” Bourgeois, 12-0916 at 8-10, 113 So.3d at 231-32. | fiThe court of appeal therefore reversed defendant’s conviction and sentence on that count.
We agree with the First Circuit that the jury properly convicted defendant of the offense of forgery, although we do not subscribe to the court of appeal’s view that by altering the Act of Giving in Payment, defendant had purported to make “a copy of an original when no such original existed.” Bourgeois, 12-0916 at 5-6, 113 So.3d at 229. Defendant clearly did not purport to make a copy of a non-existent writing when he copied over page three of the original Act of Giving in Payment and made it appear that it was the original page three. The evidence established that defendant altered the original proposal offered by Southeast by making changés to the original document that were obvious, as to which Southeast subscribed, and a far less obvious change, as to which Southeast did not subscribe, although it signed the revised Act.
The offense of forgery is committed when any part of a writing is altered with fraudulent intent, La.R.S. 14:72(A), and we agree with the state that defendant had forged the Act of Giving in Payment by altering part of the document so that it falsely purported “[t]o be the act of another who did not authorize that act.” La. R.S. 14.72(C)(l)(a)(i). This definition reflects the common law understanding of forgery as a crime related solely to the authenticity of writings. See Gilbert v. United States, 370 U.S. 650, 657, n. 10, 82 S.Ct. 1399, 1403, 8 L.Ed.2d 750 (1962) (“ ‘Forgery, or the crimen falsi, * * * may with us be defined (at common law) to be, “the fraudulent making or alteration of a writing to the prejudice of another man’s right” * * *.’ ”) (quoting 4 Blackstone, Commentaries (Christian ed. 1809, 247-248)); see also Model Penal Code, Part II, § 224.1, p. 290 (Final Draft and Revised Comments 1980) (“The line to be drawn is thus between factors that go to 17the genuineness or authenticity of the document and factors that go to the accuracy or truth of statements contained in a valid instrument.”).
*565 The alteration (with fraudulent intent) that may falsify any part of a writing, rendering it inauthentic and a forgery, may occur after the document is signed. State v. Nesseth, 127 Cal.App.2d 712, 274 P.2d 479, 483 (1954) (“[Alteration of a document without authority with the intent to defraud may constitute forgery and ... such alteration may consist of the insertion of matter in the document in question after it has been signed.”) (citations omitted). But in certain cases, the alteration may also occur before the document is signed. See Roland M. Perkins, Criminal Law, p. 348 (2nd ed. 1969) (distinguishing between fraud in the inducement, when a person is induced to sign an otherwise genuine promissory note by fraudulent misrepresentations, a crime, but not forgery, and fraud in factum, when a person has no intention of signing the paper on which his signature appears because the writing itself is false, as if “a different paper was substituted by sleight-of-hand and his signature appeared ... without his knowledge.”); see also Model Penal Code, Part II, § 224.1 at 290 (“One may also commit forgery by procuring the actual signature of another, where the victim is tricked into signing a document which was not what it was supposed to be.”) (footnote omitted); Buck v. Superior Court of Orange County, 232 Cal.App.2d 153, 162, 42 Cal.Rptr. 527 (1965) (“Where a person who has no intention of selling or encumbering his property is induced by some trick or device to sign a paper having such effect, believing that paper to be a substantially different instrument, the paper so signed is just as much a forgery as it would have been had the signature been forged.”) (citations omitted).
In the present case, defendant accomplished his sleight-of-hand by substituting his page three of the Act for Southeast’s page three, in such a way that it looked exactly like Southeast’s page three, and then practiced the art of 18misdirection by making the obvious changes on pages four and five, which he initialed, and presented as his “counteroffer” set to expire on a date certain. Defendant thereby induced Southeast into signing a false writing it thought was its own, as slightly and apparently modified on the last pages. We have no doubt that Southeast’s original offer in its original Act of Giving in Payment sent to defendant fell within the class of writings purporting to have legal efficacy for purposes of La.R.S. 14:72, as any other written offer that may become the basis for a completed contract by agreement of the parties with the stroke of a pen. The court of appeal properly affirmed defendant’s conviction and sentence on this count.
In support of its decision relative to filing a false public record, the court of appeal cited two cases, both of which involved an intermediary knowingly filing a false public record authored by the defendants. See State v. Carpenter, 00-0436, p. 9 (La.App. 3 Cir. 10/18/00), 772 So.2d 200, 207 (police chief aided and abetted in filing of false report, and thus, was a principal to offense, under circumstances in which he planted white powder in suspects’ vehicle, false report was predicated on this evidence, and, given his position and experience as chief, defendant had to know that false report would be prepared and filed and that both false evidence and false report would be employed to support improper arrests, and subordinate officer actually filing report was aware of its falsity); State v. Daigle, 95-2393, p. 6-7 (La. App. 1 Cir. 9/27/96), 681 So.2d 66, 70 (witnesses testified defendant introduced accomplice as himself to phlebotomist working for paternity blood testing laboratory, phlebotomist testified she witnessed accomplice forge defendant’s name on blood test consent form). In the present case, *566 on the other hand, Southeast had acted as an innocent intermediary when it filed the Act of Giving in Payment. The court of appeal therefore rejected the state’s argument that Carpenter and Daigle stood for the broader proposition “that mere knowledge |flby the instant defendant that the altered Act of Giving in Payment ‘would be filed’ violated La.R.S. 14:133.” Bourgeois, 12-0916 at 9, 113 So.3d at 231.
As a commercial concern specializing in purchasing underperforming loans, Southeast was certain to record the Act of Giving in Payment to secure its rights in the property transferred to it by defendant in satisfaction of the outstanding loan. See La.C.C. art. 3338(1) (an instrument that transfers an immovable or establishes a real right in or over an immovable must be recorded in the appropriate mortgage or conveyance records to have effect against third parties). But the filing and recording of the Act of Giving in Payment served defendant’s interests as well. The Act set out in detail the history of the loan obtained by 1102, as the promissory note, with the accompanying mortgage on the land securing the loan, passed from one holder to another until it reached Southeast, in a series of transactions that were all duly recorded by the Clerk of Court for St. Tammany Parish. The Act of Giving in Payment concluded with directions to the Clerk of Court “to cancel and erase” the mortgage and related assignment of leases and rents and financing statement on the property from the “the official records of St. Tammany Parish.”
Thus, the state proved more than that it was a foreseeable consequence of the transaction with defendant that Southeast would file the forged document. The filing of the Act of Giving in Payment was a necessary consequence of the agreement signed between Southeast and defendant, and it would directly benefit not only Southeast but also defendant. Under these circumstances, more to the point than Carpenter and Daigle is the decision of the United States Supreme Court in United States v. Giles, 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493 (1937), which upheld the conviction of a federal reserve bank teller for violating 12 U.S.C. § 592, prohibiting the false making of any record or report of a federal reserve bank, on evidence that to disguise his own shortages, the teller withheld deposit slips of | inmember banks and thereby led the bookkeepers to misstate the accounts of those banks. “To hold the statute broad enough to include deliberate actions from which a false entry by an innocent intermediary necessarily follows,” the Supreme Court concluded, “gives to the words employed their fair meaning and is in accord with the evident intent of Congress. To hold that it applies only when the accused personally writes the false entry or affirmatively directs another so to do would emasculate the statute — defeat the very end in view.” Giles, 300 U.S. at 48-49, 57 S.Ct. at 344. As support for that conclusion, the Supreme Court drew on the decision in Morse v. United States, 174 F. 539, 547 (2nd Cir.1909), which held under 12 U.S.C. § 592 that a bank officer could be found guilty of making false entries with fraudulent intent even when those entries were made not by the director personally but by bookkeepers acting as innocent intermediaries. Morse observed in this regard that a “defendant is as fully responsible for any false entries which necessarily result from the presentation of these pieces of paper which he caused to be prepared as he would if he had given oral instructions in reference to them or had written them himself.” Id. Giles and Morse are specific applications of the general rule that “an individual (with the necessary intent) may be held liable if he is a cause in fact of the criminal violation, even though the result *567 which the law condemns is achieved through the actions of innocent intermediaries.” United States v. Kelner, 534 F.2d 1020, 1022 (2nd Cir.1976) (citations omitted); see also United States v. Lucas, 516 F.3d 316, 336 (5th Cir.2008) (agreeing with government’s position that “[a] principal is criminally culpable for causing an intermediary to commit a criminal act even where the intermediary has no criminal intent and is innocent of the substantive crime”).
In the present case, by signing the Act of Giving in Payment from which the filing of the false document would necessarily follow to serve his own interests as Inwell as those of Southeast, the innocent intermediary, defendant made himself as responsible for the false filing as if he had made it himself. The state thus provided sufficient evidence of defendant’s guilt as a principal concerned in the filing of false public records, and the court of appeal erred in holding otherwise. The decision of the court of appeal to vacate defendant’s conviction for filing a false public record is therefore reversed and the conviction and sentence are reinstated.
HUGHES, J., dissents and assigns reasons.

. As originally enacted by 1942 La. Acts 43, La.R.S. 14:72 provided simply that "[Qorgery is the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.” The issuing of a forged writing was also made the crime of forgery. In 2001 La. Acts 922, the legislature rewrote La.R.S. 14:72(A) to provide that "[i]t shall be unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy.” The amendment retained the prohibition against issuing a forged writing but added a subsection (C) to provide (a) that the term "forge” means "[to] alter, make, complete, execute, or authenticate any writing,” in three distinct situations Which are clearly exhaustive and not merely illustrative: (i) "To be the act of another who did not authorize that act; (ii) To have been executed at a time or place or in a numbered sequence other than was in fact the case; or (iii) To be a copy of an original when no such original existed."

. R.S. 14:133, states in pertinent part:
A. Filing false public records is the filing or depositing for record in any public office or with any public official, or the maintaining as required by law, regulation, or rule, with knowledge of its falsity, of any of the following:
(1) Any forged document.
(2) Any wrongfully altered document.